UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-442-JHM-CHL

JOHN R. FOUTS,                                                                           Claimant,

v.

COMMISSIONER OF SOCIAL SECURITY,                             Defendant.

## Report and Recommendation

Claimant John R. Fouts ("Fouts") has filed this lawsuit challenging the Commissioner's denial of his request for disability insurance benefits ("DIB"). Fouts filed his fact and law summary on November 27, 2017, and the Commissioner timely replied on December 20, 2017. This matter was referred to the undersigned for a report and recommendation on September 29, 2017. (DN 10.) For the reasons stated below, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I. Factual Background

On April 4, 2014, Fouts filed an application for DIB. (DN 9-5, #252.) The Commissioner denied his initial application and again upon reconsideration. (DN 9-3, #147, 161). On July 18, 2016, Fouts and his attorney appeared before Administrative Law Judge Christopher C. Sheppard ("ALJ") for a hearing.[1] (DN 9-2, #77.) The ALJ issued an unfavorable opinion on September 6, 2016. (*Id*. at 55.) In his written opinion, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2018.

---

[1] The hearing was conducted via video conference: the ALJ was in Lexington, Kentucky, and Fouts testified from Louisville.

2. The claimant has not engaged in substantial gainful activity since December 19, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: status post micro-discectomy, hypothyroidism, neuropathy, obstructive sleep apnea, and chronic fatigue syndrome. (20 CFR 404.1520c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Par 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant is able to lift and carry 20 pounds occasionally and ten pounds frequently; sit six hours in an eight hour workday with the ability to alternate to standing for one to three minutes after every 45 minutes of sitting; stand and/or walk for a total of six hours out of an eight hour day but must alternate to sitting after every 45 minutes of standing and/or walking; and push and pull as much as he can lift and carry. The claimant is unable to climb ladders, ropes, or scaffolds and only occasionally climb ramps and stairs. He can occasionally stoop, kneel, crouch, and crawl. He should avoid hazards such as moving mechanical parts and unprotected heights. He should also avoid concentrated exposure to vibration.

6. The claimant is capable of performing past relevant work as an expeditor, officer manager, and insurance clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (DN 20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 19, 2011, through the date of this decision (20 CFR 404.1520(f)).

(*Id*. at 60–69.) The Appeals Council subsequently denied Fouts's request for review. (*Id*. at 31.)

## II. Standard of Review

The Social Security Act authorizes payment of DIB to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). A "disability" is an:

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

2

> can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). When a claimant files an application for DIB, the claimant must establish that he or she became "disabled" prior to the date his or her insured status expired. 42 U.S.C. § 423(a), (c); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (per curiam).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. 20 C.F.R. § 404.1520(a)(1); *Sullivan v. Finkelstein*, 496 U.S. 617, 620 (1990). Only steps four and five are at issue in this case.

At step four, the ALJ considers the claimant's residual functional capacity ("RFC") and past relevant work. 20 C.F.R. § 404.1520(f). RFC is an assessment of the claimant's "remaining capacity for work once her limitations have been taken into account." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004) (internal quotation marks omitted). The claimant bears the burden of proof during this step. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At step five, the ALJ assesses the claimant's residual functional capacity along with age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). A claimant who cannot make an adjustment to other work is disabled. 20 C.F.R. § 404.1520(g)(1). The Commissioner has the burden at this step of demonstrating that there are other jobs the claimant can perform in the local area. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

This Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence." 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F. 3d at 695. In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). The Court must also determine if the correct legal standards were applied. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

### III. Analysis

On review, Fouts makes three arguments. First, he argues that his case should be remanded for further deliberation before the Commissioner because MRI results from a June 2016 examination were mistakenly omitted from the record. (DN 11-1, #805.) Second, Fouts argues that the ALJ improperly evaluated his hearing testimony concerning his chronic fatigue syndrome. (*Id.* at 806.) Finally, he argues that the ALJ improperly evaluated the opinions of his two treating physicians, Dr. Bradley and Dr. Fetter. (*Id.* at 809.) The Court will address these arguments in turn.

### A. June 10, 2016 MRI Missing From the Record

Fouts first directs the Court's attention to the results of a June 10, 2016 MRI, which revealed that he had a "hypointensive lobular structure measuring about 12 mm in length x 7 mm

in AP dimension in the anterior right side of the neural canal behind the mid-portion of the L5 body, not previously present in this location." (DN 11-2, #812–13.) Fouts also provides for the Court a review of the test conducted by a board certified neuroradiologist several months later in September 2016. The neuroradiologist opined that the "hypointensive lobular structure" was an "extruded disc fragment" which "possibly impinges upon the descending right L5 nerve root within the lateral recess." (*Id*. at 813.)

Unfortunately, the MRI results did not reach the ALJ for consideration. Fouts asserts— and the Commissioner concedes—that the MRI results and the neuroradiologist review of them were "mistakenly omitted" and are relevant. (DN 12-2, #818; DN 11-1, #805.) The Commissioner argues, however, that the MRI evidence is not "material" as defined under the Social Security Regulations because it is "merely cumulative" of evidence that the ALJ did in fact consider in reaching his decision. (DN 12-2, #818.) Fouts has requested reversal and remand so that the ALJ may reconsider Fouts's claim in light of the new evidence. (DN 11-1, #810.)

The Court may remand the case to the Commissioner for further consideration if (1) there is new, material evidence that was not available at the time of the proceeding and (2) there is good cause for failure to incorporate such evidence into the record in a prior proceeding. 42 USC §405(g). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is "material" only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence." *Id*. (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). A claimant can show "good cause" by

"demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). The mere fact that the evidence was not in existence at the time the ALJ rendered his decision does not necessarily satisfy the "good cause" requirement. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986). The claimant bears the burden of showing that remand is appropriate because of the new evidence. *Id.*

In this case, the undersigned finds that Fouts has not met his burden for three reasons. First, Fouts's June 2016 MRI could have been submitted to the ALJ at the time of the hearing. Although the neuroradiologist did not review the MRI until September 1 (after the hearing and five days before the ALJ issued his decision), the MRI took place on June 10 (approximately one month before his hearing before the ALJ). Thus, the MRI is not "new" evidence. *See Ransom v. Berryhill*, 2018 WL 3118679, at *10 (E.D. Ky. June 25, 2018). The requirement that evidence be "new" does not consider the reasons why the evidence was not submitted to the ALJ at the time of the hearing, only if it could have been. Here, The June 2016 MRI could have been submitted to the ALJ at the time of the hearing, but it was not.

Second, Fouts has not shown good cause for failure to incorporate the evidence into the record in a prior proceeding. Indeed, his only argument towards satisfying this requirement is the implication that because he has accused the Commissioner of losing the file, he is entitled to remand. But Fouts should have known that the September 2016 re-review of his MRI would not have been included in his original submission, and he should have supplemented his file with the additional evidence. He did not do so.

6

Third, Fouts has not demonstrated that the omitted MRI was "material." Fouts does not directly address the materiality requirement in his brief, nor does he explain how the ALJ would have reached a different decision if he had considered the MRI. He only posits that if the "information [were] adequately considered by the ALJ, an obvious worsening of his lower back pain would have been substantiated." (DN 11-1, #806.) This is little more than a restatement of the definition of "materiality." The evidence that Fouts's lumbar spine is deteriorating is similar to evidence already in the record and considered by the ALJ. For instance, an April 22, 2014 MRI showed a "small posterior central disc protrusion" at the L4-L5 level that caused a "mild flattening of the anterior thecal sac." (DN 9-7, #536.) Moreover, when analyzing his lumbar injuries, the ALJ noted that following his botched surgery in 2009, Fouts worked at labor-intensive job in his winery and performed a variety of household tasks. (DN 9-2, #68.) It was on these grounds that the ALJ determined that Fouts could perform light work, and a newer MRI that had similar results when compared to past MRIs was unlikely to make the ALJ alter his decision. Thus, the undersigned does not believe that there is a reasonable probability that the ALJ would have reached a different decision.

### B. The ALJ's Analysis of Fouts's Chronic Fatigue Syndrome

Next, Fouts takes issue with the ALJ's analysis of Fouts's Chronic Fatigue Syndrome ("CFS"). Fouts states that when addressing his CFS, the ALJ did not follow Social Security Ruling 14-1p, which, *inter alia*, requires the ALJ to factor into his RFC analysis the limitations caused by the symptoms. (DN 11-1, #807.) Fouts argues that the ALJ did not credit his testimony at his hearing concerning his CFS and that he relied too heavily on the treatment notes of Dr. Anthony Alexander when conducting his RFC analysis. (*Id*. at 808.) On the other hand, the Commissioner

argues that the ALJ properly considered all the available evidence when formulating his RFC analysis concerning Fouts's CFS, including his subjective complaints at his hearing, treatment notes from his doctors, and his reported symptoms following the treatment. (DN 12, #819–20.)

While the ALJ must consider all of a claimant's statements about his symptoms, including pain, a claimant's statement that he is experiencing pain or other symptoms will not alone establish that he is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416,929(a); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) ("First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms."). "[I]f the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247 (citing 20 C.F.R. § 416.929(a)). 20 CFR §404.1529(c)(1) requires the ALJ to "consider all of the available evidence from [the] medical sources and nonmedical sources" when evaluating the intensity and persistence of a claimant's symptoms. In addition to the objective medical evidence, the ALJ is required to consider other evidence, such as a claimant's daily activities, the duration, frequency, and intensity of the pain or other symptoms, non-medication-based treatment for the condition, and "any [other] measures" utilized to mitigate the symptoms. 20 CFR §404.1529(c)(3).

In this case, the undersigned finds that substantial evidence supports the ALJ's RFC analysis. Throughout his analysis, the ALJ noted instances of Fouts complaining of fatigue to his medical providers: early 2012 to Dr. Bradley, late 2014 and 2015 to Dr. Alexander (DN 9-2, #64),

February and May 2016 to Dr. Fetters (*Id*. at 66), and June 2016 to Dr. Luo (*Id*. at 67). He also noted that Fouts complained of "extreme fatigue" during his administrative hearing. (*Id*. at 63.) But the ALJ also noted that Fouts reported feeling "40 to 50 percent better" after receiving ozone therapy from Dr. Fetters. (*Id*. at 66.) Fouts made this statement to Dr. Fetters a little over a month and a half before his hearing before the ALJ, which undermines his testimony of suffering from "extreme" fatigue. Additionally, the ALJ noted that Fouts first complained of fatigue in 2012 to Dr. Bradley (*Id*. at 68); following that complaint, however, Fouts reported to Dr. Alexander in 2014 and 2015 that he spent most of his time "caring for his son, performing household chores, feeding goats, transporting kids, cooking, doing laundry, participating in aquatic therapy at the YMCA, and computer programming." (*Id*.) Based on Fouts's reported activities following the onset of his "extreme fatigue," it was reasonable for the ALJ to not fully credit his statements at his hearing concerning his CFS. In short, the ALJ reasonably concluded that if Fouts spent as much time as he said he did doing the above activities, his fatigue must have not been as severe as he claimed.

    A claimant challenging the AJL's analysis of her testimony faces a high burden. It is well-established in the Sixth Circuit that an ALJ's "credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. App'x. 508, 511 (6th Cir. 2013) (citing *Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 112 (6th Cir. 2010)); *see also Buxton v. Halter*, 246 F. 3d 762, 773 (6th Cir. 2001) (ALJ's determination of a claimant's credibility is "entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints."). An ALJ's judgment of credibility cannot be disturbed absent a "compelling reason." *Ritchie*, 540 Fed. App'x at 112. There is no compelling reason here. As the ALJ

9

demonstrated in his opinion, Fouts's complaints of fatigue at his hearing are certainly consistent with statements he made in the past to his physicians, but his most recent treatment history and reported progress suggest that his fatigue has greatly improved in the months preceding the hearing. Accordingly, the undersigned finds that the ALJ's decision to not include fatigue-related limitations in his RFC analysis is supported by substantial evidence.

### C. The ALJ's Treatment of Dr. Bradley's and Dr. Fetters's Opinions

Related to the above, Fouts's final argument is that the ALJ did not follow the treating physician rule when he assigned little weight to the opinions of Dr. Bradley and Dr. Fetters. (DN 11-1, #809.) Fouts does not argue that their opinions should have been given controlling weight, but rather "some" weight. (*Id.*) He argues that the ALJ improperly assigned "no weight" to Dr. Bradley's opinion despite her long treatment history of Fouts (dating back to 2004) and that he "summarily dismiss[ed]" Dr. Fetters's medical opinion. (*Id.* at 809–10.) He concedes, however, that the portions of their opinions that address whether Fouts is "disabled" and unable to work within the meaning of the regulations is a decision reserved for the Commissioner, and that the ALJ was correct when he did not afford those portions controlling weight. (*Id.* at 809.) Therefore, the undersigned will not address the ALJ's decision to disregard the conclusions that Drs. Bradley and Fetters reached regarding Fouts's ultimate ability to work.

Under the Social Security regulations, there are three categories of opinions from medical sources: treating, examining, and non-examining sources. 20 CFR §404.1502. A physician will be considered a treating source if the claimant sees him or her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Smith v. Comm'r of Soc. Sec.*, 482 F. 3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R.

§404.1502). The parties agree that Dr. Bradley and Dr. Fetter both qualify as treating physicians, so the undersigned will move on to the next step in the analysis. A treating physician's medical opinion is generally entitled to controlling weight, but it is not automatically given such weight. It is well-established that "the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary." *Edwards v. Comm'r of Soc. Sec.*, 97 Fed. App'x. 567, 570 (6th Cir. 2004) (citing *Crouch v. Sec'y of Health & Human Servs.*, 909 F. 2d 852, 857 (6th Cir. 1990)); *Hardaway v. Sec'y of Health and Human Servs.*, 823 F. 2d 922, 927 (6th Cir. 1987). If the ALJ does not give controlling weight to a treating source's opinion, he is required to:

> apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§404.1527(c), 416.927(c). These factors are the "good reasons" the Court referenced above. *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011). Even though the ALJ must articulate "good reasons," he is not required to explicitly recite the regulation factors if his explanation reflects them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008)

In this case, the undersigned finds that substantial evidence supports the ALJ's decision to afford little weight to the opinions of Drs. Bradley and Fetters. Starting with Dr. Bradley, the ALJ explained that he afforded her opinion "little weight" because there is no record that he visited her for any of his severe impairments prior to January 11, 2013. (DN 9-2, #68.) On that date, Fouts visited Dr. Bradley for a follow-up regarding his back pain. But prior to that visit, there is no record

that she ever treated him for back pain aside from a reference of back pain in 2009. (DN 9-7, #422.) The ALJ's statement reflects two of the "good reason" factors supportability of the opinion and the consistency of the opinion with the record as a whole. Moreover, Fouts continued to work at his winery following his visit to Dr. Bradley for back pain—a job which involved significant physical activity—until August 2013, eight months after his first main visit to her for back pain. His work activity following his January 2013 visit undermines Dr. Bradley's January 2013 letter, where she stated that he "has been unable to work for . . . greater than one year," and that he "is unable to pursue any type of occupation because of his back problems." (*Id*. at 422–23.) Thus, the ALJ reasonably concluded that there was little evidence to support Dr. Bradley's opinion concerning Fouts's back problems.

Turning to Dr. Fetters, the ALJ assigned little weight to an undated opinion letter from Dr. Fetters stating that Fouts "suffers from such significant fatigue, brain fog, and physical pain that I feel that he is incapable of maintaining any type of meaningful employment." (DN 9-7, #670.) The ALJ assigned little weight to the opinion because it conflicted with the Fouts's own testimony concerning his daily activities and because Dr. Fetters only treated Fouts for approximately three months (February 2016 through May 2016). (*Id*.) Once again, the ALJ's analysis reflects two of the "good reason" factors – length of the treatment relationship and the consistency of the opinion with the record as a whole. Therefore, the ALJ's decision is supported by substantial evidence.

In both cases, Fouts asserts that while the ALJ was correct to not give controlling weight to the doctors' opinions concerning his ability to work, "the statements also contain other function limitations that were in no way reflected in the ALJ's final RFC." (DN 11-1, #805.) Fouts, however, does not identify what those statements are or how the ALJ erred by not factoring them

12

into his RFC analysis. As this Court has stated before, merely raising an issue without providing any attempt at argumentation is insufficient. The undersigned will not "fill in the gaps" and search the record for the statements that Fouts alludes to. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed. App'x. 540, 543 (6th Cir. 2014) (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."))

### IV. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner's decision.

cc: Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).